IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-195-D(3)

| | |
|---|---|
| SHARON K. JONES,<br> Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **MEMORANDUM &**<br> **RECOMMENDATION** |

  This matter is before the Court on Plaintiff's Motion for Summary Judgment **[DE-11]** and Defendant's Motion for Judgment on the Pleadings **[DE's 14-15]**. Pursuant to 28 U.S.C. 638 (b)(1), this matter is before the undersigned for a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI").

**Statement of the Case**

  Plaintiff applied for DIB and SSI on June 17, 2003, alleging that she became unable to work on January 8, 2003 (Tr. 15-16). This application was denied at the initial and reconsideration levels of review. *Id.* at 15. A hearing was later held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not disabled during the relevant time period in a decision dated December 9, 2005 *Id.* at 15-23. The Social Security

1

Administration's Office of Hearings and Appeals denied Plaintiff's request for review, rendering the ALJ's determination as Defendant's final decision. Id. at 7-10. Plaintiff filed the instant action on May 9, 2006 **[DE-1]**.

## **Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was

2

applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, although the ALJ did not specifically state that Plaintiff is no longer engaged in substantial gainful employment, the Court can infer from the fact that he continued his analysis that the ALJ made such a finding. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension; diabetes mellitus; mild degenerative joint disease of the left knee; and bronchitis. (Tr. 22). In completing step three, however, the ALJ determined that none of these impairments, either singly or in combination, were severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation No.

3

4. *Id.*

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of medium work. *Id.* Based on this finding, the ALJ found that Plaintiff could not perform any of her past relevant work. *Id.* Finally, at step five the ALJ concluded that Plaintiff was not precluded from performing other work but rather that there were a significant number of jobs in the national economy that Plaintiff could perform *Id.* Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* In making these determinations the ALJ cited substantial evidence, a summary of which now follows.

Plaintiff had arthroscopic surgery on her left knee in April, 2000, almost three years before she stopped working at her heavy job level as a cook. *Id.* at 70, 145. Eight days her physician noted that she was doing well and ambulating better. *Id.* at 142. Five months later it was noted that she had no problems with her left knee. *Id.* at 139. A radiology report on August 2, 2000 noted a normal left knee. *Id.* at 206.

Dr. John Midgley, examined Plaintiff on September 9, 2003 for her chief complaint of hypertension. Dr. Midgley determined that Plaintiff's range of motion was normal. *Id.* at 156. Plaintiff's motor strength was normal in the upper and lower extremities. *Id.* She was unable to complete a stooping maneuver because of left knee pain, but Plaintiff could touch her toes and bend at the waist. *Id.* Likewise, Plaintiff had no gross or fine manipulative limitations. *Id.* Her grip strength was good and Plaintiff appeared to have

4

normal mental status. *Id.* Dr. Midgley assessed Plaintiff with hypertension, asthma, and gastroesphogeal reflux disease. *Id.* at 157.

Plaintiff was examined by Dr. Luther Sappenfield on September 30, 2003. He opined that Plaintiff's complaints of headaches were not related to ocular problems. Dr. Sappenfield also noted that Plaintiff's visual status should not significantly affect her ability to sit, stand, lift, carry, handle average sized objects, hear, speak or travel.

An x-ray of Plaintiff's left knee performed on February 5, 2000 showed early patella femoral joint spurring but otherwise was unremarkable. *Id.* at 214.

On January 8, 2004 Plaintiff was examined by Dr. C. Craig Farmer. During the examination, Plaintiff was well oriented and her ability to concentrate appeared to be in the normal range. *Id.* at 259. She appeared to be functioning within the borderline to low average range of intellectual ability. *Id.* at 260. Dr. Farmer diagnosed Plaintiff with dysthymia and opined that Plaintiff had mild to moderate depression. *Id.* However, Dr. Farmer also determined that Plaintiff's ability to understand, retain and follow instructions was intact. *Id.* Likewise, Dr. Farmer stated that was able to perform simple tasks, relate to others and tolerate normal stress. *Id.*

The ALJ also noted that on December 31, 2004 Dr. Ahmed Ihn-Mahfoudh opined that Plaintiff was unable to work due to her medical condition. *Id.* at 18, 183. However, the ALJ made the following observations regarding Dr. Ihn-Mahfoudh's opinion:

> the . . . opinion . . . is a conclusory statement not supported by the substantial evidence and not supported by Dr. [Ihn-Mahfoudh's] own clinical findings. Further, the findings of the consultative ophthalmologist . . . shows that

> [Plaintiff's] poorly controlled blood pressure and diabetes has not resulted in end organ damage involving the eyes that would result in significant visual limitations. The record shows no indication of neuropathy that would result in ambulatory limitations, and the state agency consultative examination showed no focal neurological deficits and full motor strength in the extremities . . . She has reported severe headaches related to hypertension, but her treating physician has not recommended further evaluation of her headaches by a specialist such as a neurologist. For these reasons, the undersigned accords little weight to the opinion of [Plaintiff's] treating physician . . .
>
> *Id.* at 20.

Finally, the ALJ also referred to laboratory data gathered from November 21, 2003 to July 14, 2005. *Id.* at 18. Ultimately, the ALJ reached the following conclusions regarding the medical evidence:

> The medical evidence indicates that [Plaintiff] has essential hypertension, diabetes mellitus, mild degenerative joint disease of the left knee, and a history of bronchitis, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal, either singly or in combination [any listed impairment] . . . Her hypertension does not meet the requirements of listing 4.03, the listing of hypertensive cardiovascular disease . . . The evidence does not establish that [Plaintiff's] hypertension has resulted in any ischemic heart disease, chronic heart failure, vision impairment or loss of motor function . . . Her diabetes mellitus does not meet the requirements of listing 9.08, because the evidence does not establish significant motor dysfunction associated with neuropathy, repeated episodes of acidosis or retinitis proliferans. Her respiratory impairment does not meet the requirements of Listing 3.02 or 3.03 because the evidence does not show pulmonary function testing, DLCO levels or arterial blood gas values at the levels specified by the listings, nor does the evidence establish that [Plaintiff] has required frequent treatment for respiratory infections or asthma attacks . . . The evidence also shows an assessment of dysthmia by a consultative psychologist . . . However, that psychologist opined that this impairment would result in only mild functional limitations . . . The evidence does not otherwise reflect that [Plaintiff] has sought or obtained any mental health treatment, which also suggests that her symptoms of depression, and resultant limitations, are mild. Thus, the undersigned finds that [Plaintiff's] dysthymia is not a severe impairment . . .

*Id.* at 19.

In making his determinations regarding the severity of Plaintiff's impairments and Plaintiff's RFC the ALJ considered all of Plaintiff's symptoms, including pain. *Id.* at 19-20. Ultimately, the ALJ concluded that Plaintiff's testimony regarding her pain and impairments was not wholly credible. In reaching this conclusion, the ALJ noted the following:

> While [Plaintiff's] impairments would reasonably be expected to result in some pain and limitation, her allegations are substantially disproportionate to the medical evidence of record. For example, she alleges severe, incapacitating headaches, but she only takes over the counter medications for them, and her treating physician has not prescribed significant pain medication or referred her to a pain management clinic. She also testified that her physician advised her to keep her legs elevated at all times, but the recommendation is not reflected in the clinical evidence. She also testified that she is frequently drowsy and dizzy due to her medications, but the clinical notes of her treating physician do not reflect that she has complained of this as a significant problem. Her activities of daily living do not appear to be significantly restricted from her impairments, as she is able to cook, clean, and wash clothes and enjoys watching television and reading. These activities are inconsistent with her testimony that she is only able to stand five minutes and walk for five or 10 minutes. For these reasons, the undersigned has concluded that [Plaintiff's] allegations are not fully credible.
> *Id.* at 21.

After weighing this evidence, the ALJ determined that Plaintiff retained the RFC to perform a significant range of medium work. *Id.* at 22. Specifically, the ALJ concluded that Plaintiff retained the RFC to:

> lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk six hours in an eight hour day; sit six hours in an eight hour day; unlimited pushing/pulling; occasional climbing and kneeling; frequent balancing, stooping, crouching and crawling; avoid concentrated exposure to respiratory

7

>     irritants.
> *Id*.

Based on the forgoing record, the Court hereby finds that there was substantial evidence to support the ALJ's conclusions. The undersigned shall now address Plaintiff's specific assignments of error.

**A. The ALJ did not err in assessing Plaintiff's depression, intellectual functioning and headaches**

Plaintiff argues that the ALJ erred in assessing the severity of Plaintiff's alleged depression, borderline intellectual functioning and chronic headaches. In assessing these conditions as non-severe, the ALJ relied primarily on the report of Dr. Farmer. *Id*. at 19, 258-260. That report has already been summarized, *supra*., and it constitutes substantial evidence supporting the ALJ's determination. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. However, this is precisely what Plaintiff asks this Court to do. Plaintiff's argument consists primarily of highlighting evidence the ALJ allegedly "failed" to consider. However, the record clearly reflects that the ALJ did consider the evidence highlighted by Plaintiff. Because there is substantial evidence in the record to support the ALJ's determination, this assignment of error is without merit.

**B. The ALJ did not err in determining Plaintiff's Residual Functional Capacity**

Plaintiff argues that there was not substantial evidence to support the ALJ's finding

8

regarding Plaintiff's residual functional capacity ("RFC"). An individual's RFC is what that person can still do despite physical and mental impairments. 20 C.F.R. §§ 404.1545, 416.945(a). RFC is determined at the fourth step of the sequential evaluation process.

In this case, the ALJ found that Plaintiff retained the residual capacity to perform a significant range of medium work (Tr. 22). Specifically, the ALJ determined that Plaintiff retained the RFC to:

> lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk six hours in an eight hour day; sit six hours in an eight hour day; unlimited pushing/pulling; occasional climbing and kneeling; frequent balancing, stooping, crouching and crawling; avoid concentrated exposure to respiratory irritants.
> *Id*.

As with the previous assignment of error, Plaintiff's argument consists primarily of highlighting evidence the ALJ allegedly "failed" to consider. This argument is meritless, as the Court has already determined that the ALJ weighed all the relevant evidence and that the medical record contains substantial evidence supporting the ALJ's RFC determination.

**C. Plaintiff's subjective complaints were properly considered**

Plaintiff assigns error to the ALJ's determination regarding the credibility of Plaintiff's testimony. In concluding that Plaintiff's testimony was not wholly credible, the ALJ noted the following:

> While [Plaintiff's] impairments would reasonably be expected to result in some pain and limitation, her allegations are substantially disproportionate to the medical evidence of record. For example, she alleges severe, incapacitating headaches, but she only takes over the counter medications for them, and her treating physician has not prescribed significant pain medication

9

> or referred her to a pain management clinic. She also testified that her physician advised her to keep her legs elevated at all times, but the recommendation is not reflected in the clinical evidence. She also testified that she is frequently drowsy and dizzy due to her medications, but the clinical notes of her treating physician do not reflect that she has complained of this as a significant problem. Her activities of daily living do not appear to be significantly restricted from her impairments, as she is able to cook, clean, and wash clothes and enjoys watching television and reading. These activities are inconsistent with her testimony that she is only able to stand five minutes and walk for five or 10 minutes. For these reasons, the undersigned has concluded that [Plaintiff's] allegations are not fully credible.
> *Id.* at 21.

In short, the ALJ concluded that Plaintiff's testimony was not entirely credible because it was inconsistent with other evidence in the record. *Id.* "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The ALJ's findings of fact demonstrate that he considered all of Plaintiff's limitations and impairments. Likewise, the ALJ's citations to Plaintiff's medical records, as outlined *supra.*, constitute substantial evidence which support his findings. For these reasons, this assignment of error is also without merit.

**D. The ALJ properly rejected the opinion of Plaintiff's treating physician**

Plaintiff contends that the ALJ erred when he chose not to give controlling weight to the medical opinion of Dr. Ihn-Mahfoudh. "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). Rather, "a treating physician's opinion on the nature

10

and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir.1999) (unpublished opinion)(internal citations omitted).

In his order, the ALJ explained his reasons for giving Dr. Ihn-Mahfoudh's opinion less than controlling weight. The ALJ stated that Dr. Ihn-Mahfoudh's opinion was internally inconsistent and not supported by the medical evidence of record (Tr. 20). This determination by the ALJ was supported by substantial evidence and, therefore, this assignment of error is also meritless.

**E. The ALJ did not err by not calling a vocational expert**

In the instant matter, the ALJ used the medical-vocational guidelines ("Grids") to determine that there were jobs in the national economy which Plaintiff could perform. Plaintiff alleges that because she suffers from non-exertional impairments (i.e.–depression, low average intellectual functioning, and chronic headaches) the ALJ was required to use the testimony of a vocational expert to determine whether Plaintiff is capable of performing other

jobs in the national economy. However, "if . . . [Plaintiff] has no nonexertional impairments that prevent her from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy his burden of proof." Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir. 1987); Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983). The Grids are dispositive of whether an individual is disabled when the individual suffers from purely exertional impairments. Aistrop v. Barnhart, 36 Fed. Appx. 145, 146 (4th Cir. 2002)(unpublished opinion).

     Here, the ALJ determined that the Plaintiff's non-exertional impairments were not severe. Likewise, the ALJ did not limit Plaintiff's RFC based on any non-exertional impairments. The Court has already determined that these findings were supported by substantial evidence in the medical record. Accordingly, the ALJ was permitted to rely upon the Grids and this assignment of error is meritless.

**Conclusion**

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Summary Judgment **[DE-11]** be DENIED, Defendant's Motion for Judgment on the Pleadings **[DE-14]** be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 15th day of February, 2007.

_____
William A. Webb
U.S. Magistrate Judge